USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------x

CAPITAL VENTURES INTERNATIONAL,

                Plaintiff,

      – against –

THE REPUBLIC OF ARGENTINA,

                Defendant.

-----------------------------------------x

05 Civ. 4085 (TPG)

**OPINION**

Plaintiff Capital Ventures International ("CVI") moves pursuant to Fed. R. Civ. P. 56 for summary judgment on bonds defaulted on by defendant Republic of Argentina. The motion is denied with leave to renew when the record contains certain further information.

## Background

This action arises from the Republic of Argentina's failure to make principal and interest payments on certain bonds issued by the Republic and, according to CVI, beneficially owned by CVI. This motion pertains to the following bonds, denominated in Deutsche Marks and Euros: ISIN Codes DE0001954907, DE0001319507, DE0002488509, DE0001308609, DE0001354751, DE0001904308, DE0001300200, DE0001340909, DE0002929452, DE0004509005, DE0002483203 and DE0005450258 (collectively, the "German Bonds").

On December 23, 2001, the Republic declared a moratorium on the payment of principal and interest with respect to all of its foreign debt. In response to the default, on various dates in 2005 and 2006, CVI accelerated the bonds it owned that were not already in default, making the principal immediately due.

On April 25, 2005, CVI filed the original Complaint in this action, which sought more than $111 million for beneficial interests owned in 22 securities denominated in U.S. Dollars, Euros, and/or Deutschemarks and issued by the Republic of Argentina. After the Republic moved to dismiss the Complaint, CVI filed an Amended Complaint on July 13, 2005 seeking approximately $74.5 million for 16 of the 22 securities.

On July 14, 2005, CVI filed a motion for partial summary judgment as to those 4 series of bonds denominated in U.S. Dollars, and the court granted that motion by order dated May 17, 2006.

On July 29, 2005, the Republic moved to dismiss CVI's claims on the German Bonds. On September 19, 2006, CVI moved for summary judgment as to its claims on the German Bonds. At a hearing on February 15, 2007, the court denied CVI's motion for summary judgment and granted the Republic's motion to dismiss. These rulings were later recorded by Memo Endorsements entered on February 23, 2007. The basis for these rulings was the court's holding that the Republic had waived its sovereign immunity to suit on the German Bonds only in Frankfurt and Buenos Aires, not in the United States.

CVI appealed the February 15 decision, and on January 13, 2009, the Second Circuit reversed, holding that the Republic's waiver of sovereign immunity was broad enough to create U.S. subject-matter jurisdiction over suits involving the German Bonds. Capital Ventures Int'l v. Republic of Argentina, 552 F.3d 289, 296 (2d Cir. 2009). The Second Circuit remanded the case to this court to consider whether, in light of their decision, it would be appropriate to grant plaintiff's motion for summary judgment. Id.

On July 7, 2009, the Republic filed a petition for a writ of certiorari, which was denied by the Supreme Court on October 5, 2009.

On July 9, 2009, CVI filed the instant motion for summary judgment on the German Bonds.

## Legal Standard

Summary judgment may be granted if there is no genuine issue as to any material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). The substantive law determines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making the summary judgment determination, the court must draw all justifiable inferences in favor of the non-movant. Id. at 255. However, the non-movant is obligated to "set out specific facts showing a genuine issue for trial," and "may not rely merely on allegations or denials" to support its opposition to the motion. Fed. R. Civ. P. 56(e)(2).

## Discussion

CVI argues that summary judgment on the German Bonds is appropriate because: (1) CVI is the beneficial owner of the bonds; (2) the Republic has defaulted on the bonds; and (3) as recently determined by the Second Circuit, the Republic's waiver of sovereign immunity was broad enough to create U.S. subject-matter jurisdiction.

The Republic argues that this court lacks both statutory and Constitutional specific personal jurisdiction over the Republic with respect to claims based upon the German Bonds because such claims do not "arise out of" and are not "related to" its activities in the United States. The Republic also argues that this court lacks general personal jurisdiction because the Republic did not have "continuous and systematic" business activities in the United States at the time CVI brought this lawsuit. Finally, the Republic argues that CVI has failed to provide proof of beneficial ownership sufficient to prevail on summary judgment.

### I. Personal Jurisdiction

The Supreme Court has drawn a distinction between "specific" and "general" forms of personal jurisdiction. Specific personal jurisdiction requires "minimum contacts" with the forum and a controversy that is "related to" or "arises out of" those contacts. General personal jurisdiction requires that a defendant have "continuous and systematic" contacts with the forum, but the controversy itself need not be related to

or arise out of those contacts. Helicopteros Nacionales de Colombia, S.A.
v. Hall, 466 U.S. 408, 414-15 (1984).

A. Specific Personal Jurisdiction

1. Statutory Personal Jurisdiction: FSIA § 1608

By statute, personal jurisdiction over a foreign state exists where
(1) there is subject-matter jurisdiction under the FSIA and (2) service has
been made in accordance with Section 1608 of the FSIA.  28 U.S.C.
§ 1330(b).  Here, as to the first requirement, the Second Circuit has
determined that there is subject-matter jurisdiction under the FSIA.  As
to the second requirement, however, the Republic argues that CVI failed
to properly serve the Republic with process for the German Bond claims.

28 U.S.C. § 1608(a)(1) provides that service on a foreign state shall
be made "by delivery of a copy of the summons and complaint in
accordance with any special arrangement for service between the plaintiff
and the foreign state . . . ."  Here, the bondholders and the Republic
apparently agreed that the appointed agent for service of process for
German Bond claims would be located in Frankfurt, Germany.  However,
CVI served the complaint in this action upon Banco de la Nación
Argentina in New York, which is the Republic's appointed agent for
service of process for U.S. Bond claims, not German Bond claims.
Defendant argues that because CVI failed to properly serve the Republic
with process, this court lacks personal jurisdiction over the Republic.

Whatever the merits of this argument may be, the Republic has waived any objection to service of process in this action.  Pursuant to Fed. R. Civ. P. 12(h)(1)(A), the Rule 12(b)(5) defense of insufficient service of process is waived if not raised in a Rule 12 motion made by the party. Here, the Republic's motion to dismiss raised only the defenses of lack of subject-matter jurisdiction (Rule 12(b)(1)) and failure to state a claim upon which relief may be granted (Rule 12(b)(6)).

The Republic does not argue that it preserved a defense based on insufficient service of process, nor could it, since the defense is nowhere mentioned in either the motion to dismiss or the memorandum of law in support of the motion.  Rather, the Republic argues that because the process of service was insufficient, the court has no personal jurisdiction over the Republic under the statutory requirements of 28 U.S.C. § 1330(b).

However, in a case such as this, where the dismissal argument is based on insufficient service of process, but framed under another theory, "Rule 12(b)(5) is the proper provision to challenge the mode of delivery or the lack of delivery of the summons and complaint." Ebanks v. Ebanks, 2007 WL 2591196, at *3 (S.D.N.Y. Sept. 6, 2007); see also Greene v. Wright, 389 F.Supp.2d 416, 426 n.2 (D.Conn. 2005) ("A Rule 12(b)(5) motion is the proper vehicle for challenging . . . the lack of delivery of the summons and complaint.") (quoting 5B Charles Allan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353, at 334

(3d ed. 2004)).  Therefore, Rule 12(b)(5) was the proper defense here, and

because it was not raised in the Republic's motion to dismiss, it is waived

under the terms of Rule 12(h)(1)(A).  Thus both requirements under

28 U.S.C. § 1330(b)—subject-matter jurisdiction and sufficient service of

process—are met, and statutory personal jurisdiction is proper in this

case.

### 2.  Constitutional Personal Jurisdiction: Due Process

Although the statutory requirements have been satisfied, the

Republic argues that personal jurisdiction must also be established in

accordance with the Constitutional requirements of due process.  The

Republic cites Texas Trading & Mill. Corp. v. Federal Republic of Nigeria,

647 F.2d 300, 308 (2d Cir. 1981) for the proposition that "each finding of

personal jurisdiction under the FSIA requires, in addition, a due process

scrutiny of the court's power to exercise its authority over a particular

defendant."

However, the Second Circuit overruled this holding of Texas

Trading in September 2009 in Frontera Resources Azerbaijan Corp. v.

State Oil Co. of Azerbaijan Republic, 582 F.3d 393 (2nd Cir. 2009).  The

court in Frontera held explicitly that "foreign states are not 'persons'

entitled to rights under the Due Process Clause . . . ."  582 F.3d at 400.

Accordingly, the Republic of Argentina, as a foreign state, is not entitled

to due process protection, and this argument fails.

B. General Personal Jurisdiction

The Republic also argues that the court lacks general personal jurisdiction over the Republic because CVI has failed to demonstrate that the Republic was engaged in "continuous and systematic general business contacts" in the United States at the time it filed its original complaint, as required under Helicopteros, 466 U.S. at 416. However, as described above, the court has specific personal jurisdiction over the Republic in this matter, so a finding of general personal jurisdiction is unnecessary.

II. Standing and Proof of Ownership of the German Bonds

In Fontana v. Republic of Argentina, 415 F.3d 238 (2d Cir. 2005) and Applestein v. Province of Buenos Aires, 415 F.3d 242 (2d Cir. 2005), the Second Circuit held that the owner of a beneficial interest, such as plaintiff here, must receive authorization from the registered holder of the bond before it may sue, but that the Republic may waive the authorization requirement. The Republic has agreed to waive objections based on lack of authorization where the court makes a finding of current ownership. See Transcript, March 28, 2006, Cilli v. Republic of Argentina (04 Civ. 6594).

As proof of its current ownership of the German bonds, CVI submits:

    (1)    Dozens of hand-written trade tickets produced internally by CVI that purport to demonstrate the dates on which CVI

purchased beneficial interests in the German Bonds;

(2)     A July 7, 2005 letter from CVI's prime broker, Merrill Lynch International, together with a spreadsheet of current CVI Argentina bond positions, including German Bonds, U.S. bonds, and others;

(3)     An October 5, 2005 letter from Euroclear Bank listing Merrill Lynch's Argentina bond holdings in the name of CVI;

(4)     An October 6, 2005 letter from Merrill Lynch together with a spreadsheet of current CVI German Bond positions;

(5)     An April 14, 2006 "Margin Statement" from Merrill Lynch, listing the amount of CVI bond holdings, but utilizing Merrill Lynch identifiers for the particular bonds rather than ISIN Codes;

(6)     A September 15, 2006 declaration of plaintiffs in support of their motion for summary judgment;

(7)     Plaintiffs' September 18, 2006 Rule 56.1 Statement;

(8)     An October 12, 2006 letter and declaration of Max Hayden, a Merrill Lynch employee, together with a spreadsheet of current CVI German Bond positions;

(9)     Plaintiffs' October 27, 2006 Reply Declaration in support of their Motion for Summary Judgment;

(10)   A July 7, 2009 declaration from an assistant vice president of Susquehanna Advisors Group, Inc., CVI's investment

manager, to the effect that CVI's original submissions are

still accurate and that CVI has not sold any of the German

Bonds; this declaration also notes that for certain of the

bond series, CVI holds more bonds than it has sued on in

this action;

(11)   An October 14, 2009 declaration of Max Hayden, a Bank of

America/Merrill Lynch employee, together with a

spreadsheet of current CVI German Bond positions.

Nonetheless, the Republic argues that CVI has failed to

demonstrate that there is no genuine issue of material fact as to its

beneficial ownership of the German Bonds.  See Albee Tomato, Inc. v.

A.B. Shalom Produce Corp., 155 F.3d 612, 618 (2d Cir. 1998) (where

summary judgment movant has the burden of proof, its own

submissions in support of the motion must entitle it to judgment as

matter of law).  The Republic challenges the adequacy of CVI's proof on a

number of fronts.

First, the Republic notes that although CVI allegedly purchased

the German Bonds from at least six dealers (including large firms such

as Citigroup and J.P. Morgan), CVI has submitted no confirmation slips

or other documents from these dealers to corroborate CVI's self-

generated trade tickets.

Second, the Republic notes that seven of the twelve series of the

German Bonds are bearer bonds, which are not registered, either on the

Republic's books or on the books of any central depository, but are instead represented by definitive certificates with interest coupons that exist in physical form. The Republic points out that although CVI has submitted original certificates and interest coupons to support its claims in Frankfurt, it has failed to submit any such original certificates here.

Third, the Republic argues that none of the reports, from Merrill or Euroclear, were prepared in the ordinary course of business and therefore fail to provide adequate foundation for their admissibility as business records under Federal Rule of Evidence 803(6). See Fed. R. Civ. P. 56(e)(1) ("A supporting or opposing affidavit must . . . set out facts that would be admissible in evidence . . . ."). The Republic notes that the 2006 account statement in particular disclaims its own accuracy and completeness.

Fourth, the Republic argues that all of CVI's proof as to beneficial ownership is now over three years old, and therefore insufficient to support its claim of continued ownership of the German Bonds. However, CVI has submitted an additional Merrill Lynch declaration dated October 14, 2009, which would appear to resolve this problem.

Finally, the Republic points to a number of inconsistencies from submission to submission regarding the total amount of each bond issue allegedly held by CVI. For example, between July 7, 2005 and October 14, 2009, the total nominal value of CVI's holdings of the bond numbered ISIN DE0001300200 rose from 153,000 to 16,701,000 and

then fell back to 153,000.  For six of the other bond issues the amount

also fluctuated, although for the other five the amount was identical in

each submission.

This court has had numerous occasions to consider what measure

of evidence amounts to sufficient proof of current beneficial ownership of

Argentina bonds for the purpose of summary judgment.  See, e.g.,

Capital Ventures International v. Republic of Argentina, 2006 WL

1379607, at *2 (S.D.N.Y. May 18, 2006) (certification from broker

sufficient); Colella v. Republic of Argentina, 2006 WL 399449, at *2

(S.D.N.Y. Feb. 21, 2006) (facially valid bank statement demonstrating

beneficial interests and date of purchase sufficient); Greylock Global v.

Republic of Argentina, 2006 WL 397908, at *2 (S.D.N.Y. Feb. 17, 2006)

(account statements from broker sufficient); Mazzini v. Republic of

Argentina, 2005 WL 743090, at *3-4 (S.D.N.Y. Mar. 31, 2005) (properly

executed declaration plus account statement generally sufficient; court

will also accept other evidence confirming that bonds in plaintiffs'

accounts are bonds they claim to own); Allan Applestein v. Republic of

Argentina, 2003 WL 22743762, at *2-3 (S.D.N.Y. Nov. 20, 2003)

(brokerage statement showing date of issuance, interest rate, and date

due found sufficient; brokerage statement listing bonds totaling less than

the amount sought and lacking the series under which the bonds were

issued found insufficient); EM Ltd. v. Republic of Argentina, 2003 WL

22120745, at *2 (S.D.N.Y. Sept. 12, 2003) (affidavits and statements of

account sufficient).  As a general matter, over the course of the Argentina

bond default litigation, this court has "required account statements

and/or certifications from brokers and banks to make a finding of

current ownership of beneficial interests." Capital Ventures, 2006 WL

1379607 at *2.

Here, CVI provides 4 separate letters and/or declarations from

broker Merrill Lynch, 1 letter from Euroclear Bank, 1 declaration from

the Susquehanna Advisors Group, 1 Margin Statement from Merrill

Lynch, 1 declaration of its own, and 1 Rule 56.1 Statement.  It is clear

from the court's previous holdings that the Republic's first three

challenges to CVI's proof of ownership must fail, as brokerage trade

confirmation slips, original certificates and interest coupons, and

admissibility under Fed. R. Evid. 803(6) have never been required by this

court to prove beneficial ownership of Argentina bonds.  The Republic's

fourth challenge, staleness of proof, has been remedied by the October

14, 2009 Merrill Lynch declaration.  The Republic's final challenge,

regarding inconsistencies from submission to submission, is weightier.

It would seem that, with the exception of the five bond series

whose total amounts are identical in every supporting affidavit, there

remains a genuine issue of material fact as to the quantity of bonds

owned by CVI.  The inconsistencies noted by the Republic may be

explainable by the simple fact that CVI holds more bonds in certain

series than it sues on here, as noted in the July 7, 2009 Declaration from

- 13 -

the Susquehanna Advisors Group.  But the record simply does not

provide a precise explanation as to the fluctuating levels of ownership

and exact amounts held on deposit for each of the bond series.  (Still, it

should be noted that in each case CVI is suing for the smallest amount

listed in any of the affidavits, which would seem to alleviate concern as to

the overstatement of their bond interests.)

Further, there is no independent evidence presented addressing

the date of purchase of any of these bonds.  Instead, CVI relies for this

information solely on its self-produced trade tickets.  Therefore, viewing

the evidence in the light most favorable to the nonmoving party, there

remains a genuine issue of material fact as to the bonds owned by CVI as

of April 25, 2005, the date CVI brought this action.

The court has no doubt that these questions can be resolved, and

will call a conference to determine how this can be done.

But for the present, the motion for summary judgment is denied,

with leave to renew after resolution of the factual issues.

SO ORDERED.

Dated:  New York, New York
        March 31, 2010

Thomas P. Griesa
U.S.D.J.

- 14 -